Moore *v.* Dunn and Fell.  Wilkinson's Appeal.  Dunn's Appeal.

| 147 | 359 |
|-----|-----|
| 199 | 377 |

| 147 | 359 |
|-----|-----|
| f 19 SC | 55 |

*Practice (C. P.)—Validity of judgment attacked by subsequent creditors.*

A rule to open judgment at the instance of a subsequent judgment creditor is contrary to established practice and the rights of the plaintiff, and will be discharged as a matter of course.

| 147 | 359 |
|-----|-----|
| 27 SC | 219 |

| 147 | 359 |
|-----|-----|
| 39SC | 236 |

The proper practice is to apply for a rule on the plaintiff and sheriff to show cause why the money produced by the sheriff's sale on the prior execution should not be paid into court, and dispute the validity of the judgment before an auditor, or apply for an issue to be tried in court.

*Distribution of proceeds of sheriff's sale—Issue—Disputed facts.*

Under the act of June 16, 1836, providing for an issue if any fact connected with the distribution of the proceeds of a sheriff's sale is in dispute, an issue is not a matter of right on filing an affidavit that there are material facts in dispute, without stating what they are.  The applicant must set out the specific facts in dispute, on which he bases his claim: Schwartz & Graff's Ap., 21 W. N. C. 246, distinguished.

The proper practice to obtain an issue is for the complaining creditor to file an affidavit that the judgment attacked is fraudulent and collusive, and without consideration, and that it is intended to hinder, delay and defraud creditors.  On this the plaintiff in the attacked judgment may file an affidavit denying the averments; but if he will not, the court should grant the issue as a matter of course.  If the plaintiff files a denial, depositions should be taken and on them the court will determine whether the issue shall be granted, subject to an appeal if the issue be refused, as provided by the act of 1846.  If a denial is filed and the applicant will not take depositions, the issue should be refused: Per ARNOLD, J.

In this case the plaintiff resisted the application for an issue and sustained his judgment by depositions which the court held sufficient, and refused the issue.

Argued Jan. 28, 1892.  Appeals, Nos. 453 and 454, Jan. T., 1891, by James Wilkinson and James Dunn, et al., from orders of C. P. No. 4, Dec. T., 1890, No. 659, discharging rule on

sheriff to pay money into court, and refusing petition for an issue.   Before Paxson, C. J., Sterrett, Green, McCollum, Mitchell and Heydrick, JJ.

Petitions were filed by James Wilkinson and Dunn & Fell praying for an issue to determine whether S. M. Moore's relations with James Dunn and C. H. Fell did not make him jointly liable with them to their firm creditors.

Rules were also taken by James Wilkinson and Dunn & Fell to show cause why the fund produced by the sheriff's sale should not be paid into court and an issue awarded to determine whether the plaintiff or James S. Wilkinson was entitled to the fund.

James S. Wilkinson was a judgment creditor subsequent to Moore.   Other facts appear in the opinion of the court by Arnold, J., which was as follows :

" So many applications, like the present, have been made of late, that we deem it proper to write our reasons for refusing them.   The rule to open the judgment at the instance of the subsequent judgment creditor must be discharged as a matter of course, because it is contrary to established practice and the right of the plaintiff.   It is a mistaken notion that a subsequent execution creditor can intervene in a suit between his judgment debtor and another plaintiff.   The proper practice is to apply for a rule on the plaintiff and sheriff to show cause why the money produced by the sheriff's sale on the prior execution should not be paid into court, and dispute the validity of the judgment before an auditor, or apply for an issue to be tried in court.

" In Shulze's Ap., 1 Pa. 251, Chief Justice Gibson said of the case of Whiting v. Johnson, 11 S. & R. 328, in which the judgment was opened at the instance of a subsequent creditor : ' At that time (1824) the practice was not to award a collateral issue, but to *open* the judgment. . . . The proceeding was one of those miserable shifts to which we were driven for want of the powers of a court of chancery.   The statute (of June 16, 1836) on which the present proceeding is founded, directs that a suggestion of fraud be tried in a collateral issue to which the parties may be fabulous ; but it seems to be forgotten that, as the whole is a chancery proceeding, the names

of the actual parties ought to appear as complainants and defendants.' For none but the parties to the issue take any benefit from the result, as was decided in Tomb's Ap., 9 Pa. 61, on the same judgment, and other cases hereinafter referred to; nor can the defendant avail himself of the result of an issue between his creditors : Ferree v. Thompson, 52 Pa. 353; and the inquiry is, whether the judgment is a fraud upon the other judgment creditors of the defendant, and not merely a fraud on the debtor—a harsh rule, it must be admitted, for a fraud on the debtor is none the less a fraud on his creditors. But the rule is firmly established in a line of cases, of which Dougherty's Estate, 9 W. & S., 189; Brown v. Parkinson, 56 Pa. 336; Thompson's Ap., 57 Pa. 175, and the Appeal of the Second National Bank of Titusville, which is twice reported, first in 85 Pa. 528, and again in 96 Pa. 460, are conspicuous examples; although there are some precedents the other way, as Greene v. Tyler, 39 Pa. 361; Bachdell's Ap., 56 Pa. 386, and the Miners' Trust Co. v. Roseberry, 81 Pa. 309 ; which were explained and distinguished in the Appeal of the Second National Bank of Titusville, supra, so as to establish the rule to be that subsequent creditors may attack a prior judgment or mortgage to the extent of usurious principal, but not as to usurious interest; and it was ruled the same way in Lennig's Ap., 93 Pa. 301, settling the question which was left undecided in Verner v. Carson, 66 Pa. 440. Perhaps, if the debtor were to refuse to move for the benefit of his creditors, they would be permitted to move in his name. I say perhaps, because the point was not positively ruled in Lewis v. Rogers, 16 Pa. 18; or Clark v. Douglass, 62 Pa. 408, although creditors did get the benefit of a defendant's rights in McNaughton's Ap., 101 Pa. 550, and they may show that the judgment has been paid: Smith's Exec'rs v. Wagenseller, 21 Pa. 491.

" An application similar to the one before us was made and refused in Gates v. Johnston, 3 Pa. 52, of which Chief Justice GIBSON said : ' It redounds greatly to the credit of the judge, however, that he did not follow the old, clumsy, unprofessional and barbarous practice of opening the judgment between the original parties, who must be bound by it between themselves, whatever may be the event between the plaintiff and the creditors, but awarded a collateral issue to try, not,

'indeed, whether it was collusive, as it ought to have been, but whether it was good for any part of the debt,' etc., which was wrong, for the reason, that if the judgment was fraudulent in part, it was void in the whole as against other creditors.

" An exception, as to partly good and partly bad judgments, · must be noticed in cases of judgments held by married women against their husbands, in which the excessive part will not be attributed to bad faith, but will be presumed to be a mistake, or included in good faith, as was done in Gicker's Admin'rs v. Martin, 50 Pa. 138; Meckley's Appeal, 102 Pa. 536; Howard Watch Co. v. Bedillion, 131 Pa. 385. This, no doubt, is because of a courteous presumption in favor of the integrity of all dealings between a failing debtor and his wife—a presumption which other creditors may rebut if they can, but which they seldom can rebut if they would. On this point judges and jurors seem to agree.

" Concerning the lien of judgments upon real estate, the Chief Justice said in Watson v. Willard, 9 Pa. 89, that the proper practice for subsequent creditors is not to intervene, but to purchase the equity of the defendant on their judgments, and try title with the holder of the legal estate, who in that case claimed unpaid purchase money, although he admitted that the practice had been otherwise. 'But,' said he, ' our irregular practice, growing, as it does, out of our mixed system, and our consequent disregard of common law forms has been, in most cases, to let the creditors intervene; and it is too deeply seated to be torn up. It is not to be commended for simplicity; for it has all the hitches and entanglements of confusion, insomuch that judgments unimpeachable by the parties to them, have been opened on the allegation of collusion at the instance of creditors, and never closed against the defendants, who were entitled to no relief whatever.' For, said he, in Donaldson v. The West Branch Bank, 1 Pa. St. 294, ' so true it is, that he who forgets the forms of the law, will soon forget its principles.' In The Miners' Trust Co. v. Roseberry, 81 Pa. 309, it does not appear that the judgment was opened, but an issue was awarded to determine how much was due on the judgment, which seems to be the approved practice. Other cases on this frequently adjudged point may be found in Muhlenberg v. Brock, 25 Pa. 517; Schick's Appeal, 49 Pa. 380

and 384; Clark v. Douglass, 62 Pa. 408, and Fowler's Appeal, 87 Pa. 449.

" The foregoing disposes of the rule by James E. Wilkinson, a subsequent judgment creditor of the defendants as trustee for the benefit of their creditors, to open the judgment and let him into a defence, which will be discharged as of course.

" Upon the rule by the defendants for the same relief, we have to say that the evidence shows that the amount of the judgment for which the plaintiff has issued execution is justly due and owing, and their rule will also be discharged.

" Mr. Wilkinson has also obtained a rule to show cause why the sheriff should not pay the fund realized by the sale under the plaintiff's execution into court for distribution by an auditor, so that an issue may be framed to determine to whom the money should be paid. It is alleged that the plaintiff was a partner with the defendants; or if not a partner, that he lent the amount of his claim to the defendants, on an agreement that he should receive a share of the profits of their business in lieu of interest, as authorized by the act of April 6, 1870, P. L. 56; that he is liable as a copartner in such business to the extent of the money so lent, and that, consequently, he cannot take it out until the other creditors have been paid; for if he does, he will be liable in a suit therefor by other creditors of the business, according to Poundstone v. Hamburger, 27 W. N. 220.

" We will first consider the practice on this branch of the case. It is enacted by the act of June 16, 1836, § 87, P. L. 777, before noticed, that in the distribution of the proceeds of sheriff's sales, if any fact connected with such distribution shall be in dispute, the court shall, at the request in writing of any person interested, direct an issue to try the same; to which a proviso was added by the act of April 20, 1846, § 2, P. L. 411, that, before an issue shall be directed, the applicant shall make affidavit that there are material facts in dispute, and shall set forth the nature and character thereof, upon which the court shall determine whether such issue shall be granted.

" It is sometimes urged at bar that an issue is a matter of right on filing an affidavit that there are material facts in dispute, without stating what they are, notwithstanding the act requires the applicant to set forth the nature and character of

those facts. This urgency overlooks the fact that the decisions are the other way, although there is a case which seems to be out of trim with the general rule, but which is not, as I shall presently show.

" The rule was early established that ' a mere naked allegation, without evidence, or against the evidence, cannot create a dispute within the meaning of the law. If it could, a party might stop the distribution whenever he chooses to make a groundless assertion : ' BLACK, C. J., in Knight's Ap., 19 Pa. 493. The applicant must set out the specific facts in dispute, on which he bases his claim to an issue : Dickerson and Haven's Ap., 7 Pa. 255, in which Mr. Justice BELL said : ' The act of assembly (of 1836) was not formed to enable a litigious party to demand an issue, under all circumstances, and thus take his chance before a jury, when there is nothing in the case to call for its intervention.' These cases are cited and approved in Overholt's Ap., 12 Pa. 222 ; Shertzer's Exec'rs v. Herr, 19. Pa. 34 ; Seip's Ap., 26 Pa. 176 ; Russell v. Reed, 27 Pa. 166 ; Christopher v. Selden, 28 Pa. 165 ; Robinson et al.'s Ap., 36 Pa. 81, and the Providence Steam and Gas Pipe Co. v. Chase, 108 Pa. 319. In Benson's Ap., 48 Pa. 159, it was said that if the issue must necessarily prove unavailing, the court would not be bound to grant it, for the law does not require vain things ; and in Souder's Ap., 57 Pa. 498, it was ruled that the demand may be refused, where it embraces questions of law rather than of fact, or it is manifest that the matter to be tried cannot affect the decision. Martin's Ap., 97 Pa. 85, and Montgomery's Ap., 5 Cent. Rep. 200, are to the same effect ; and the general rule as above stated was reaffirmed as late as 1887 in Irvin's Ap., 9 Cent. Rep. 389, and again in 1889 in Ryman's Ap., 124 Pa. 635.

" The argument that the court must grant an issue in every case in which an averment is made that the prior judgment is without bona fide consideration, and was made for the purpose of hindering, delaying and defrauding creditors, is based on the case of Schwartz and Graff's Ap., 21 W. N. 246 (1888.) A careful reading of that case will show that what was decided is, that an allegation that a judgment is fraudulent and without bona fide consideration, and was confessed and is being used for the purpose of hindering, delaying and defrauding

other creditors, is a sufficient averment of material facts in
dispute, and that it is not necessary to state in the affidavit
the means by which the want of consideration is to be proved.
That is to say, the applicant is not bound to give his evidence
in his affidavit.   It will be noticed also that it does not appear
that the allegations of the petitioner for the issue were denied,
but it does appear that the creditor whose judgment was dis-
puted was not willing to contend in the Supreme Court, and
hence the court had nothing to do but to grant the issue as of
course.

  " But if the plaintiff, whose judgment is attacked, denies the
averments of the applicant for an issue, then depositions should
be taken to be used on a further hearing of the rule, as was
done in Stanley v. Ritter, 26 W. N. 188, to enable the court
to determine whether an issue shall be granted; for it seems
illogical to say that the court shall determine or adjudge a
matter, and yet that it must grant an issue on the averments of
the applicant, without regard to the denial of the other party,
and in disregard of the evidence, and the test whether a ver-
dict, if rendered in favor of the applicant, would be allowed
to stand.   If that is the meaning of the act the legislature has
not been happy in the choice of words to express it.   That it
is not I will show by reference to the foundation of those cases
in which it was decided that an issue is a matter of right on
filing a written request.   They were based on the act of April
14, 1827, sec. 2, 9 Smith's Laws, 433, which provided that in
the distribution of the moneys arising from sheriff's sales, when
the facts are disputed, the court, at the request in writing of
any party in interest, shall direct an issue to try the same.
This was substantially re-enacted by the act of 1836, before cit-
ed.   But this positive right was modified by the act of 1846, be-
fore cited, which requires the applicant for an issue to set forth
in his affidavit the nature and character of the facts in dispute,
upon which the court shall determine (that is, decide or adjudge)
whether the issue shall be granted.   It was upon these acts of
1827 and 1836 that the decisions favoring an absolute right to
an issue were rendered, most of them prior to 1846, and some
since, the latter entirely overlooking the change in the law
made by the act of 1846.   They are Bichel v. Rank, 5 Watts,
140 ; Trimble's Ap., 6 Watts, 133 ; Reigart's Ap., 7 W. & S.

267; Souder's Ap., 57 Pa. 498. The same was said in Dormer v. Brown, 72 Pa. 404, although the point in controversy and decided was that when issue has been granted it is erroneous to strike it off after a jury has failed to agree on it.

" It is sometimes said that the demand for an issue is a demand for a constitutional right. Respect for the great and learned men who have said this forbids me from deciding it otherwise; but I may be permitted to say that it seems to be a statutory rather than a constitutional right, for it did not exist prior to the act of 1827. Chief Justice GIBSON called an issue a chancery proceeding in Shulze's Appeal, before cited. If there had been a court of equity in this state before 1836, when equity powers were conferred upon the courts, the right to relief would have been secured by bill in that court; and a verdict on an issue, if granted, would not have been binding on the chancellor, who might have decreed contrary to the finding thereon; he could have disregarded the verdict, as his conscience would not be bound by it : Johns v. Erb, 5 Pa. 232. But under the act of assembly the verdict is conclusive and cannot be disregarded : Garrison's Ap., 38 Pa. 531; although it may be directed by the judge or set aside and a new trial granted: Dormer v. Brown, supra; hence it has been said that it is better not to award an issue, when the fact can be sufficiently and satisfactorily ascertained by the court itself: Baker v. Williamson, 2 Pa. St. 116 ; Johns v. Erb, supra.

" The right to a trial by jury is secured only in cases at common law, and it is generally supposed to pertain only to the main issue in dispute and preliminary judgment, but not subsequent thereto : Banning v. Taylor, 24 Pa. 289. It does not pertain to matters of execution or arising therefrom, as on a claim of exemption: Williamson v. Krumbhaar, 132 Pa. 455; overruling Tasker v. Sheldon, 115 Pa. 107. The legislature may extend trial by jury to some such matters, in which case it may, as it did in the act of 1846, prescribe the terms on which the right may be secured, or make it subject to judicial determination whether a trial by jury may be had in any particular case.

" None but judgment creditors have a right to be heard on the distribution of the proceeds of sheriff's sales. Creditors who have not obtained judgments cannot: Smith v. Reiff, 20

Pa. 364; Rudy's Ap., 94 Pa. 338; but an assignee in bankruptcy may : Rohrer's Ap., 62 Pa. 498 ; or an assignee for the benefit of creditors : Barrett's Executors Ap., 71 Pa. 317. This is because an assignment is a grand judgment and execution. So may an attaching creditor under the fraudulent debtor's act of March 17, 1869 : Schwartz and Graff's Ap., 21 W. N. 246.

"To summarize the matter, the proper practice to obtain an issue is for the complaining creditor to file an affidavit that the attacked judgment is fraudulent and collusive, and without consideration, and that it is intended to hinder, delay and defraud creditors. On this the plaintiff in the attacked judgment may file an affidavit denying the averments ; but if he will not, the court should grant the issue as a matter of course. If the plaintiff files a denial, depositions should be taken, and on them the court will determine whether the issue shall be granted, subject to an appeal, if the issue be refused, as provided by the act of 1846. If a denial is filed and the applicant will not take depositions, the issue should be refused on the analogy of a bill and answer in equity, where the answer, if responsive, overcomes the bill, unless it is supported by evidence. This is the same as the practice on a rule to dissolve an attachment under the act of 1869 : Biddle v. Black, 99 Pa. 380; White v. Thielens, 106 Pa. 173; and in foreign attachment: Steel v. Goodwin, 113 Pa. 288.

"In the present case the plaintiff resists the application of the petitioner, and sustains his judgment by depositions which prove that it is a bona fide judgment for the sum of $2,500, for which execution was issued ; that he was not a partner with defendants, nor did he lend his money to them on an agreement for a share of the profits in lieu of interest; but that he lent his money to the defendants at six per cent interest, with an agreement that he should have the privilege of becoming a partner on or after April 1, 1891, if his health would permit. Both the defendants admit that the plaintiff was to receive legal interest, and one of them admits that a partnership was not mentioned, that is, formed, when the money was lent ; but that is was to commence at the end of the year, or after a year's trial. As the money was lent in October, 1890, and the defendants failed in January, 1891, the trial has not been satis-

factory, and the partnership has not been formed. On this evidence it would be unjust to require that the small amount, $526, produced by the sheriff's sale, should be paid into court, and consumed in a fruitless effort to prove the plaintiff to have been that which we are convinced that he was not, either a partner or lender of his money at the risk of the business.

" Allegations that judgments are collusive and fraudulent are made with great facility. Being a matter of opinion, the conscience of the deponent is not subjected to any great strain in making the allegation. A disappointed creditor is easily convinced that he has been defrauded and will readily depose to that effect. But when his adversary comes with his array of facts it is the duty of the court to give effect to them and determine accordingly.

" We see no reason to order the fund in this case to be paid into court, and therefore discharge the rule."

*Errors assigned* were, in refusing to award the issue prayed for and discharging rules to pay the fund into court.

*James Aylward Develin, Theodore D. Rand* with him, for appellants.

*Henry M. Tracy, N. H. Larzelere* with him, for appellees.

PER CURIAM, February 8, 1892.

The opinion of the learned judge of the court below covers the ground so fully that nothing remains to be added. We affirm the order discharging the rule to pay money into court, and to frame an issue, for the reasons given by him.