In re Emilio J. SCIORTINO, Debtor.

R.C.R. SERVICES, INC., d/b/a Mortgage Default Services Co., an agent for the Secretary of Housing and Urban Development, Plaintiff,

v.

Emilio J. SCIORTINO and Dorothy M. Sciortino, Defendants.

Bankruptcy No. 89–14694S.
Adv. No. 90–0163S.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 24, 1990.

Philip A. Bertocci, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

Gary E. McCafferty, Philadelphia, Pa., for R.C.R. Services, Inc.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant proceeding, a state-court mortgage foreclosure action removed to this court by the Debtor, presumably to obtain a receptive forum to prosecute his motion to open a default judgment entered therein, which the mortgagee did not seek to remand, is reminiscent of the matter at issue in *In re Miller*, 90 B.R. 762 (Bankr.E. D.Pa.1988). It illustrates the difficult issues regarding comity and the impact of the automatic stay lurking behind, but not directly addressed, in proceedings such as *Miller*, in which this court is asked to provide relief from another court's judgment. While expressing our belief that this case should have been remanded to decide the motion to open the judgment, we also conclude that we will not act *sua sponte* to do so, as the issue is not jurisdictional. We therefore proceed to open the foreclosure judgment as to the Movant–Debtor only and, as in *Miller*, relegate all future aspects of the parties' dispute to the claims process.

On October 27, 1989, R.C.R. SERVICES, INC. ("RCR") commenced a mortgage foreclosure action against the Debtor, EMILIO J. SCIORTINO ("the Debtor"), and his wife, DOROTHY M. SCIORTINO ("the Wife") (the Debtor and the Wife are collectively referred to as "the Mortgagors"), in the Court of Common Pleas of Philadelphia County ("the C.P. Court"). The mortgagors were served with process on November 6, 1989. No responsive pleading having been filed by the Mortgagors, RCR entered a judgment against the Mortgagors by default on December 13, 1989. On December 20, 1989, the Debtor filed the underlying individual Chapter 13 bankruptcy case in this court. A meeting of creditors was conducted on April 11, 1990, and a Confirmation hearing is scheduled on July 19, 1990.

On March 20, 1990, the Debtor filed an Application to remove the foreclosure action from the C.P. Court to this court, which automatically effects the removal. *See* Bankruptcy Rule 9027(d). On March 26, 1990, we entered an Order directing that any motion to remand this proceeding be filed by RCR on or before April 6, 1990; that the Debtor respond to any such motion on or before April 16, 1990; and that, if the matter were not remanded, a status conference to address the future of this proceeding would be held on April 26, 1990.

RCR did not file a motion to remand this proceeding. The Debtor, however, filed a motion to open or set aside the default judgment in the foreclosure action on

March 29, 1990. At the status conference on April 26, 1990, RCR's counsel expressed a belief that the entire dispute between the parties could be expeditiously settled. In the event that this did not transpire, we directed RCR to answer the Debtor's motion to set aside the judgment by May 10, 1990, and scheduled a hearing on the motion on May 17, 1990.

On the latter date, the parties reported that no settlement had been consummated. Consequently, the Mortgagors appeared and both testified as the sole witnesses on the Debtor's motion. They both stated that, upon receipt of the mortgage foreclosure complaint, they had consulted a local practitioner specializing in filing Chapter 13 bankruptcy cases. However, that practitioner advised them that a successful Chapter 13 proceeding was infeasible due to the Mortgagors' low income and apparently large mortgage delinquency balance.

The Mortgagors then consulted their present counsel employed by a program providing free legal services to low-income persons. An initial appointment was apparently missed when the Wife's automobile broke down on the way to the appointment. The bankruptcy was filed expeditiously after a later, consummated appointment. One goal of the bankruptcy filing was to stay the foreclosure proceeding prior to judgment. Only some time after the filing did the Mortgagors' present counsel learn that judgment had in fact been entered against the Mortgagors prior to the bankruptcy filing, prompting the instant motion.

In addition to claiming frustrated good faith efforts to defend this proceeding, the Debtor argued that the following defenses existed to the foreclosure proceeding: (1) RCR had failed to account for the fact that the Mortgagors' obligation had been assigned to RCR by the United States Department of Housing and Urban Development ("HUD") after an assignment of the mortgage to HUD. The Debtor's counsel intimated that issues regarding the Mortgagors' liability on the mortgage were similar to those addressed in *In re Epps*, 110 B.R. 691 (E.D.Pa.1990); and *In re Santos*, 97 B.R. 227 (Bankr.E.D.Pa.1989), regarding obligations of mortgagors subsequent to HUD mortgage assignments. Apparently, he believed that the presence of such issues created a potential for the Debtor to propose a confirmable Plan. The Debtor produced a Forbearance Agreement reciting that the Mortgagors' payments were suspended entirely between February and July, 1986; (2) The notice of intention to foreclose, provided to the Mortgagors by RCR, pursuant to 41 P.S. § 403(c), included the following recitation of payments required from the Mortgagors to cure the default:

. . .THE TOTAL AMOUNT NOW REQUIRED TO CURE THIS DEFAULT, OR IN OTHER WORDS, GET CAUGHT UP IN YOUR PAYMENTS AS OF THE DATE OF THIS LETTER, IS NOTED BELOW UNDER (e).

|  |  |
|---|---|
| at $ 323.41 /month | |
| (a) April, 1985 thru August, 1989 | |
| at $_____/late charge/month | $12,317.73 |
| at $_____/month | |
| _____ thru _____ at $_____/late charge/month | $._____ |
| (b) Previous late charge(s); | $_____ |
| (c) Other charge(s); Escrow Deficit $2,278.24 | |
| Inspection(s); | $ 2,278.24 |
| NSF checks: $_____ | $_____ |
| (d) Other provisions of the mortgage obligation if any; | |
| | $_____ |
| (e) TOTAL AMOUNT OF (a) (b) and (c) REQUIRED AS OF THIS DATE | $14,595.97 |

You may cure this default within THIRTY (30) days of this letter by paying to us the amount under (e) above, plus any additional

monthly payments and late charges (and other charges) which may fall due during this period. . . .

---

This notice allegedly lacked the requisite disclosure of a formula by which the Mortgagors could ascertain the exact amount due to cure the default at any point in time, *see In re Mosley*, 85 B.R. 942, 953–55 (Bankr.E.D.Pa.1988); and included errors in calculation on its face, as it apparently alleged delinquencies during the period of forbearance of payments set forth in the Forbearance Agreement. *See Main Line Federal Savings & Loan Ass'n v. Joyce*, 632 F.Supp. 9, 10 (E.D.Pa.1986) (failure to accurately state amounts due in a § 403(c) notice deprives the court of subject matter jurisdiction to hear a foreclosure action).

The principal responses by RCR to the Debtor's claims were as follows: (1) The Mortgagors provided a disjointed, incoherent recitation of their efforts to defend the foreclosure action and were not able to articulate, with any degree of precision, their potential rights due to the fact that the mortgage was assigned to HUD prior to its assignment to RCR; (2) The § 403(c) violations were *de minimis*, if any, and that the contrary result in *Mosley*, although rendered in a case defended by the same counsel and not appealed, should not be followed; and (3) "Debtor has failed to state a claim upon which relief can be granted because Debtor's spouse, co-mortgagor and co-owner is not a party to the bankruptcy."

The court, as is proper, raised, *sua sponte*, the issues of the impact of the automatic stay upon the instant motion, *see Association of St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 447–48 (3d Cir.1982); and *In re 222 Liberty Associates*, 110 B.R. 196, 200 (Bankr.E.D. Pa.1990); and the possibility of the absence of subject-matter jurisdiction of this court to hear this matter, *see In re Greenley Energy Holdings of PA.*, 110 B.R. 173, 179–80 (Bankr.E.C.Pa.1990), particularly as to any claims of the non-debtor Wife.

We will first address the issue of the impact of the automatic stay upon the instant proceeding. There is little doubt that the automatic stay prevented the continuation of the instant proceeding as long as it remained a case in the C.P. Court. *See* 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(6). Furthermore, as the *St. Croix* decision makes clear, § 362 must be read "to stay all ... proceedings that were originally brought against the debtor, regardless of whether the debtor is the appellant or the appellee." 682 F.2d at 449. *Accord, Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir.1986); *Cathey v. Johns–Manville Corp.*, 711 F.2d 60, 62 (6th Cir.1983); and *In re Highway Truck Drivers & Helpers Local Union #107*, Bankr. No. 87–05211F, slip op. at 4–13 (Bankr.E.D.Pa. March 30, 1988), *aff'd*, 98 B.R. 698 (E.D. Pa.), *vacated as moot*, 888 F.2d 293 (3d Cir.1989). Clearly, then, the Debtor would have been obliged to seek and obtain relief from the automatic stay before he could pursue his motion to set aside the foreclosure judgment in the C.P. Court.

Should the removal of the proceeding to this court eliminate the impact of the automatic stay? If the answer is affirmative, then it would appear that any creditor could simply remove or commence collection proceedings against the debtor in bankruptcy court, thereby frustrating the impact of the automatic stay and rendering the bankruptcy court a glorified collection mill. If the answer is negative, as we suggested in *In re Lessig Construction, Inc.*, 67 B.R. 436, 443–44 (Bankr.E.D.Pa. 1986), then it would seem that the Debtor's motion to set aside the judgment, as well as RCR's proceeding with the foreclosure, should be stayed, as it would be if this matter had remained in or been remanded to the C.P. Court.

We believe that the resolution of this quandary is expressed in *In re TM Carlton House Partners, Ltd.*, 93 B.R. 859, 870 (Bankr.E.D.Pa.1988), where we addressed the argument of the debtor that its tenant

should not be allowed to invoke a right to setoff, contrary to 11 U.S.C. § 362(a)(7), even in an action in this bankruptcy court, without first obtaining relief from the automatic stay. There, we held that a non-debtor's "request for relief in the nature of a set off in bankruptcy-court litigation is logically the equivalent of a request for relief from the automatic stay." *Id.* Our holding in *Lessig* was explained as "merely an expressing of bankruptcy-court control over the process" of when an issue otherwise violative of the stay could be raised in bankruptcy court. *Id.* Weighing the equities of the parties' relative positions, we allowed the non-debtor to effect a setoff in *Carlton House. Id.*

■ Similar reasoning can easily be applied here. While the stay applies to the instant proceeding in this court, no separate pleading requesting relief from the stay is required to obtain relief from it. Rather, the Debtor's motion to open the judgment may be considered as the logic equivalent of a request for relief from the stay to prosecute this motion. In order to determine whether we should proceed to decide the motion, we must weigh the equities of the parties' relative positions.

Assuming that we have jurisdiction to hear the matter, there is no logical reason why the Debtor should not be granted relief from the stay to pursue the motion to obtain relief from the C.P. Court judgment against him in this court. We cannot conceive of any scenario in which the Debtor's estate would be adversely affected by allowing this motion to proceed.

On the other hand, we would be most reluctant to allow a creditor to obtain relief from the stay to pursue a collection action against a debtor, even in the bankruptcy-court forum. Only in "narrow circumstances" where "policy considerations dictate" should a bankruptcy court grant any relief, even injunctive relief, *against* a debtor, as opposed to granting the non-debtor relief to pursue the debtor in an alternative forum. *See In re New York City Shoes, Inc.,* 84 B.R. 947, 959–60 (Bankr.E.D.Pa.1988); and *In re Munoz,* 83 B.R. 334, 338 (Bankr.E.D.Pa.1988). When

monetary damages are sought against a debtor in a proceeding in bankruptcy court, the claimant is generally relegated to the claims process. *See In re Clark,* 91 B.R. 324, 337–39, 342 (Bankr.E.D.Pa.1988). Therefore, we would not allow RCR to pursue its foreclosure action in this court, irrespective of the removal of that proceeding to this court. *Accord, Miller, supra,* 90 B.R. at 770.

■ The second issue pertains to our jurisdiction to hear this matter. There are several reasons why we believe that this court should and would have promptly remanded this proceeding to the state court if we had been requested to do so. Firstly, we believe that, as a rule, the court which has originally entered a particular judgment should be accorded, as a matter of comity, the right to determine whether relief from its own judgment should be granted. *See In re Berg, Berg v. Skokie Federal Savings & Loan Ass'n,* Bankr. No. 89–13718S, Adv. No. 90–0100S, slip op. at 4, 1990 WL 53081 (Bankr.E.D.Pa. April 27, 1990); *In re Garafano,* 99 B.R. 624, 633 (Bankr.E.D.Pa.1989); and *In re Telephonics, Inc.,* 85 B.R. 312, 318–19 (Bankr.E.D. Pa.1988). Secondly, bankruptcy courts have traditionally been reluctant to retain any mortgage foreclosure proceedings removed to them. *See In re Muir,* 107 B.R. 13, 17 (Bankr.E.D.N.Y.1989); *In re Taylor, Federal National Mortgage Ass'n v. Rockafellow,* 96 B.R. 584 (Bankr.E.D.Pa.1989); *In re Mill–Craft Building Systems, Inc.,* 57 B.R. 531, 534–35 (Bankr.E.D.Wis.1986); *Howard v. Tipton,* 26 B.R. 777, 779 (Bankr. S.D.Ohio 1982); and *In re Calabria,* 5 B.R. 73, 75 (Bankr.D.Conn.1980). Finally, here, as in *Berg, supra,* we have before us a proceeding in which the rights of the Debtor's non-debtor spouse are intertwined with those of the Debtor. Proceedings involving non-debtors are frequently considered appropriate fare for abstention or remand to courts which have jurisdiction over the non-debtors. *See In re Joshua Slocum, Ltd.,* 109 B.R. 101, 107 (E.D.Pa.1989); and *In re Futura Industries, Inc.,* 69 B.R. 831, 834–35 (Bankr.E.D.Pa.1987).

Regrettably, however, as in *Miller, supra,* no motion to remand this case to the C.P. Court was filed by the mortgagee-judgment creditor. We have some doubt as to whether 28 U.S.C. § 1452(b) authorizes us to remand matters *sua sponte;* it is certainly an action we would not take lightly. Moreover, now that we have heard the matter, with the consent of both parties, it would be wasteful of scarce judicial resources to relegate the parties to state court for another hearing. Remanding the matter to the C.P. Court under 28 U.S.C. § 1452(b) at this juncture would therefore not seem to stand on "any equitable ground" as to any of the interested parties.

The susceptibility of this proceeding to remand does not affect our subject-matter jurisdiction to hear it. Clearly, it is related to a very significant claim against the Debtor's estate. *See* 28 U.S.C. § 1334(b); and *In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985). This matter may even be a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and (b)(2)(K). *Compare In re Gurst,* 75 B.R. 575, 577 (Bankr.E.D.Pa.1987). Therefore, there is no absence of subject-matter jurisdiction, such as which would definitely trigger a *sua sponte* dismissal or remand of this matter. *Accord, Miller.*

As in *Miller,* we are therefore compelled to consider the merits of the Debtor's motion. In so doing, we first touch upon the rather unusual "parties problem" raised by this motion. Although the foreclosure judgment in issue was entered against both Mortgagors, only the Debtor filed both the bankruptcy and the instant motion. As we noted at pages 425–426 *supra,* RCR apparently argues that the fact that the Wife is not a party to the bankruptcy requires dismissal of the motion. The Mortgagors, meanwhile, seem to argue that this court can grant relief to them both despite the fact that only the Debtor is a movant.

▮ While we have found little clear authority on this point, we believe that one judgment debtor can attack a judgment without the joinder of a co-judgment debtor. *See Merriman v. Walton,* 105 Cal. 403, 38 P. 1108, 1109 (1895); *Hewlett v. Van Voorhis,* 196 App.Div. 322, 187 N.Y.S.

533, 536–38 (1921); *Black v. Connor,* 80 Pa.D. & C. 211, 214 (Washington Co. C.P. 1951); 46 AM.JUR.2d 959 (1969) ("relief in equity may be granted in favor of, or against, parties to the original action *or some of such parties*") (emphasis added); and 49 C.J.S. 542 (1947) ("it is not necessary that the judgment should be vacated as to all the defendant if their liability is several as well as joint, ..."). *Cf. Cleary v. Quaker City Cab Co.,* 285 Pa. 241, 249–50, 132 A. 185, 188–89. Therefore, we see no reason why relief must or should be granted to the Wife on motion of the Debtor. *See Cleary, supra,* 285 Pa. at 249–50, 132 A. at 188–89; *Moore v. Dunn,* 147 Pa. 359, 360–61, 23 A. 596, 596–97 (1892); *Black, supra,* 80 Pa.D. & C. at 214; and *Tombaugh v. Tombaugh,* 24 Pa.C.C. 110 (Washington Co. C.P.1900). Relief can be granted only to the Debtor, who is the only movant. *See Hewlett, supra,* 187 N.Y.S. at 136–38. Concomitantly, there is nothing defective *per se* about a motion by the Debtor which attacks the judgment only as to him. *See Merriman, supra,* 38 P. at 1109; and 46 AM.JUR.2d, *supra,* at 932. We note that the *Miller* debtor was determined to be entitled to relief, on her own behalf, despite the absence of her non-debtor, ex-husband from the proceeding before the court.

▮ Having waded through these several procedural issues, we are readily prepared to grant the Debtor the relief which he seeks, at least as to himself, on the merits, on almost the same grounds that we relied upon in *Miller.* The determination of whether the instant judgment should be set aside must be decided under the equity-oriented considerations of federal law. 90 B.R. at 763–65 and cases cited therein. Of primary importance is the presumption against deciding matters by default instead of on their merits. *Id.* at 765 and cases cited therein. The testimony of the Mortgagors, while something less than a clear chronology of their actions from the date of service of the complaint on November 6, 1989, to the entry of judgment on December 13, 1989, establishes that the Mortgagors did make considerable good

faith efforts to defend this action and that they were hampered by the fact that, if anything, they were more unschooled in legal matters than the *Miller* debtor. Moreover, as of December 20, 1989, this bankruptcy was filed. The Mortgagors had reason to assume, as did their competent counsel, that this filing was a sufficient action to prevent the entry of a judgment in this proceeding. There was no conduct of the Mortgagors leading to the entry of this judgment which we would deem as culpable on their part.

We also fail to perceive any undue prejudice which would be caused to RCR if the judgment were opened. In fact, the entry of the judgment appears subject to attack by the Trustee or possibly the Debtor under 11 U.S.C. §§ 522(h), (g)(1), on the alternative basis of 11 U.S.C. §§ 547(b) and (e)(1)(A). *See, e.g., In re Martin,* 87 B.R. 394, 396–98 (Bankr.E.D.N.C.1988); *In re Antinarelli Enterprises, Inc.,* 49 B.R. 412, 414 (Bankr.D.Mass.1985), *aff'd sub nom. E.I. DuPont de Nemours & Co. v. Collen,* 791 F.2d 5 (1st Cir.1986); and *In re Norman,* 41 B.R. 1, 4–8 (Bankr.M.D.Ala.1984).

We also believe that the Debtor has a meritorious defense to the foreclosure action. The Complaint makes no reference to the assignment of the mortgage in issue to HUD and avers that the mortgage was delinquent, as did the 41 P.S. § 403(c) notice, for the entire period between April, 1985, and the date of the filing of the Complaint. It is apparent that a moratorium on the mortgage payments was effected during the term of the Forbearance Agreement, from February through July, 1986. However, RCR apparently continued to accumulate arrearages over this period. As the lengthy *Epps* and *Santos* decisions referenced *supra* attest, fixing the liability of mortgagors subsequent to a HUD assignment is a murky area. Certainly it is inappropriate, as indicated by the within Complaint, to simply ignore the fact of the assignment and attempt to hold the Mortgagors to the terms of the original, pre-HUD-assignment mortgage.

The notice of intention to foreclose is, for the same reasons, substantively defective.

The moratorium is not recited nor apparently considered at all in the computation of the total amount due. Moreover, even relative to the notice found by us to be defective in *Miller,* 90 B.R. at 767–68; and *Mosley,* 85 B.R. at 951–55, the instant notice is very unclear in explaining how the default was calculated and exactly how much the Mortgagors must pay to cure their default. Numbers and calculations are sloppily affixed on a form letter not apparently easily adapted to the instant facts. *See* pages 425–26 *supra.* Disclosure of the calculation of the default and the amount necessary to cure are not only expressly required by 41 P.S. §§ 403(c)(2) and (c)(3), but are "the most important considerations" in the notice of intention to foreclose. *Miller,* 90 B.R. at 768. Both of these disclosures are deficient in the instant notice.

Defects in a notice of intention to foreclose constitute a defense to a mortgage foreclosure action. *See, e.g., Joyce, supra,* 632 F.Supp. at 10. We therefore conclude that the Debtor had significant meritorious defenses to this proceeding. We note again that, even if such defenses were absent, the instant judgment would be potentially subject to attack pursuant to 11 U.S.C. §§ 547(b) and (e)(1)(A). *See* pages 428–29 *supra.*

We are therefore prepared to grant the Debtor's motion to open the judgment entered against him in the C.P. Court. We reiterate the caveats to this decision which have been previously touched upon by us. Firstly, our Order does not affect the judgment against the Wife, since she is not a moving party. Secondly, as in the *Miller* case, we believe that RCR's efforts to pursue its rights against the Debtor should be relegated to the bankruptcy claims process. 90 B.R. at 770. We will not grant RCR relief from the automatic stay to pursue this proceeding further against the Debtor in this forum at this juncture. We note that RCR has over 45 days to avail itself of the claims process if it has not already done so.

However, we will not direct that this proceeding be closed, as we did in *Miller.*

*Id.* This proceeding, hopefully after a motion to remand at a later juncture, may be the vehicle whereby RCR can proceed to foreclose if it is able to subsequently meet the criteria of 11 U.S.C. § 362(d). Another alternative open to RCR after obtaining relief from the stay would, of course, be filing a new C.P. Court foreclosure action. Therefore, we will carry this proceeding over for a status conference on the date of the scheduled confirmation hearing in the Debtor's main bankruptcy case, *i.e.*, July 19, 1990, at which time its usefulness or lack thereof can be reassessed.

An Order consistent with the conclusions set forth herein will be entered.